Daniels, J.
The action in the superior court was commenced on or about the 19th of April, 1884, by the defendant in this action against the plaintiff. He had been actively instrumental while he was an officer of the Erie Railway Company in incorporating the National Stock Yard Company under the laws of the state of New Jersey. The property acquired by this company was obtained from the Erie Railway Company, and for its price a mortgage was placed upon the property to secure the payment of bonds delivered to the Erie Railway Company. Robinson, the plaintiff in this action, together with his associates, issued stock of the National Stock Yard Company amounting to the sum of $1,000,000, which, as the case now stands, appears to have been divided wholly among the associates without any consideration having been received therefor by the Stock Yard Company. After the issuing of the stock it is stated that the plaintiff Robinson, together with John B. Sherman, Milton Tabor and Orvil H. Tobey, entered into an agreement by which these three persons were to surrender their respective certificates for 1,000 shares of the stock to Robinson, who was to convert their, and his own, certificates into certificates of 800 shares of the stock for each person, and use the residue of 800 shares to influence persons in official positions for desired favorable action in the „ discharge of their official duties. The certificates were so changed, and, it is alleged, that the shares to be appropriated to that object were used in that manner. And that this use was made of them was, in an action afterwards *238 brought by Tobey against Robinson, established to the satisfaction of the courts in the state of Illinois, as it appears by thé report of the decision finally made in Tobey v. Robinson (99 Ill., 222).
After the four 1,000-share certificates had been changed in the manner agreed upon, an action by the Erie Railway Company was brought to recover the stock of the National Stock Yard Company, upon the ground that it equitably belonged to that company, it having been issued solely upon the basis of the property conveyed by it, and the enterprise having been promoted and brought about by the action of its own officers. This action was compromised by Robinson, who was the defendant in it, and the railway company, by his transferring to the company 3,623 shares of the stock of the National Stock" Yard Company. And in part to induce him to make the transfer, it was agreed by the Erie Railway Company that it would save him harmless from all claims, demands and suits on account of, or which should arise out of, or be brought against him, because of the transfer to the Erie Railway Company of these shares of stock, or any of them, or on account of any claim, ownership of, or interest in said shares by any person or persons, and would indemnify and reimburse him for any damages, costs, disbursements or expenditures which he might be put to, or compelled to pay on account of such transfer, and that it would assume the defense and pay the necessary expenses of any suit or proceeding that might be instituted against him on account of such transfer, or claim of ownership. It was after the transfer of these shares of stock, and the making of this agreement, that Tobey brought his suit against Robinson, in the state "of Illinois, to recover the certificate for the 800 shares remaining in his favor after the appropriation for the object already mentioned, of the balance of 200 shares of his original certificate. And in that action, which was dismissed by the courts of the state of Illinois, because it depended upon the enforcement of an unlawful and corrupt agreement, Robinson alleges that he expended by way of defending himself a sum of money exceeding the sum of $13,000. And it was to recover that amount from the defendant, as the successor of the Erie Railway Company, which had assumed its liabilities, that Robinson, in 1884, commenced his action in the superior court of the city of New York. And the relief demanded by him was the recovery of this sum of money under the agreement made with the Erie Railway Company, in part for his protection and indemnity.
The New York, Lake Erie and Western Railroad Company answered the complaint in the superior court in the early part óf the year 1887. And in that answer it set forth a state of facts on which it has been claimed that this agreement between Robinson and the Erie Railway Company was unlawful and against good policy. And for that reason *239 that it should be exonerated from the performance of the covenants of indemnity mentioned in the agreement. And in addition thereto that it should recover against Eobinson $53,000 paid to him in bonds, for the purpose of bringing about the settlement and adjustment, and the transfer of the shares of stock mentioned in the agreement of 1875, or for an equal amount of money by way of damages. These demands were presented by way of counter-claims for which the New York, Lake Erie and Western Eailroad Company asked an affirmative judgment against Eobinson, and an extended reply was served to this answer late in March, 1887.
In the early part of April, 1887, the action in this court was commenced by the New York, Lake Erie and Western Eailroad Company against Charles Eobinson to secure the annulment of the agreement of 1875, and the recovery of the same $53,000 on the ground of its illegality. And the allegations while more elaborate, but in substance the same as those contained in its answer in the action in the superior court, were made in its complaint to set forth this right of action. Eobinson, in his answer, which was served on or about the 28th of April, 1887, answered this complaint, putting in issue its material allegations, and setting up other grounds by way of defense. And among them was the allegation that he had paid out this sum of money by way of expenses in the defense of the Tobey suit in the state of Illinois.
The action in the superior court was referred to a referee for trial, but an appeal was taken from the order of reference. And it was in this condition of the litigation that the application was made on behalf of Eobinson for a stay of proceedings in the action in this court until the suit in the superior court should be heard and determined. It will be quite evident from this statement of the subject-matter of the different actions, that, while their object may be in the main the same, the case on behalf of the plaintiff, has been more fully stated and set forth in the pleadings in the superior court than they have been in this action. For in that action, Eobinson claims to recover the expenditures made by him in the defense of the suit in the state of Illinois, under the covenants of indemnity contained in the agreement of 1875, while in the suit in this court, that claim has not been interposed by way of counter-claim in his answer. In other respects both actions are substantially to accomplish the same results for the cause of action relied upon in favor of the plaintiff in the suit in this court is presented by way of counter-claim and defense to the action in the superior court. And when both actions may appear to be in this condition, it is the practice of the court to stay proceedings in the suit last commenced until the other, including the entire field of litigation between the parties, has been heard *240 and decided. Burlingame v. Parce, 12 Hun, 149; Brown v. May, 17 Abb. N. C., 205.
And it is only when there is a substantial diversity between the actions that the application, if it be reasonably made, will be denied. Farnsworth v. W. U Tel. Co., N. Y. State Rep., 80.
By way of supporting the appeal it has been argued that the action in this court will -be more simple and direct than that pending in the superior court in securing a determination of "the legality and effect of the agreement of 1875. But there is no good reason for supposing that this action will prove in any manner superior to that in the' other court in this respect, for both the causes óf action as well as the defenses in the suit in the superior court are.dependent upon the agreement of 1875. And its validity, legality and effect will both logically and necessarily first enlist the attention of the tribunal before which the trial is to take place in that action. And if the agreement, itself, shall be held to be unlawful for any cause, then no further litigation will be required between these parties. While if it shall not be so held, or the action shall proceed to a complete examination and presentation of all the allegations of the respective parties, then it will manifestly cover, practically, nearly the same ground as the litigation in this court would extend over in the course of its examination and trial. The order, for these reasons, was providently made staying the trial in this suit until the hearing and determination of the suit in the superior court, and it should be affirmed, together with $10 costs and the disbursements.
Yam Brunt, P. J., and Brady, J., concur.